IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LILIAN ONOH,<br>    PLAINTIFF,<br><br>VS.<br><br>SAHARA REPORTERS MEDIA GROUP, INC.,<br>SAHARA REPORTERS, LLC, SAHARA<br>REPORTERS, INC., OMOYELE<br>SOWORE, GEOFFREY JIDEOFOR KWUSIKE<br>ONYEAMA, GABRIEL TAMINU ADUDA,<br>    DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    CIVIL ACTION NO. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Ambassador Lilian Onoh, and files this Original Complaint and show this Court as follows:

**Parties**

1.   Plaintiff Lilian Onoh (hereinafter "Onoh") is an individual who resides in Denton County, Texas.

2.   Defendant Sahara Reporters Media Group, Inc. is a New York corporation which does business through internet publications and may be served through its Chief Executive Officer, Omoyele Sowore, 146 West 29th, Suite 7E, New York, New York 10001.

3.   Defendant Sahara Reporters, LLC is a Delaware limited liability company which does business through internet publications and may be served through its registered agent, Chief Executive Officer, Omoyele Sowore, 146 West 29th, Suite 7E, New York, New York 10001.

4.   Defendant Sahara Reporters, Inc. is a New York company which does business through internet publications and may be served through its registered agent, Chief Executive Officer, Omoyele Sowore, 146 West 29th, Suite 7E, New York, New York 10001.

5.   Defendant Omoyele Sowore is an individual residing in 441 Jefferson Avenue, Haworth, NJ 07641.

6.   Geoffrey Jideofor Kwusike Onyeama is an individual residing in No 3 Clement Isong Street,

Asokoro, Abuja, F.C.T. Nigeria.

7.      Gabriel Taminu Aduda is an individual residing in Ministry of Petroleum Resources, NNPC Towers, Herbert Macaulay Way, Central Business District (CBD), Garki, Abuja, FCT, Nigeria.

## Jurisdiction and Venue

8.      Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this action. This Court has personal jurisdiction over the defendants given that the complained of conduct occurred in the State of Texas.

9.      Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in this District and Division.

## Facts

10.     Lilian Onoh is a citizen of Nigeria who previously served as the Nigerian Ambassador to Namibia and the Head of Mission in Jamaica.

11.     Defendant Onyeama is the former Minister of Foreign Affairs for Nigeria. Defendant Aduda is the former Permanent Secretary of Foreign Affairs for Nigeria.

10.     Defendant Sahara Reporters Media Group, Inc., Sahara Reporters, LLC, and Sahara Reporters, Inc. (collectively referred to as "Sahara Reporters) is an online news publication which mainly focuses on African news. Sahara Reporters publishes on a website named "saharareporters.com". Defendant Sowore is the Chief Executive Officer of Sahara Reporters.

11.     On or about April 21, 2023, Sahara Reporters published a story on its website concerning Ms. Onoh ("Article"). The title of the Article was:

# Nigerian Civil Service Commission Sacks Former High Commissioner To Namibia, Lilian Onoh, Over N50million Misappropriation, Recommends Trial By ICPC

12. To make sure that the readers did not mistake about whom the article concerned, Sahara Reporters included a photograph of Ms. Onoh:



13. Initially, the article notes how Sahara Reporters had previously reported that Ms. Onoh had been accused of illegally diverting funds meant for the day-to-day operation of the Nigerian mission and was asked to refund the sum of $45,539.11 (about N19 million), $70,448 (about N30million), and N614,000.

14. The article then claims that the Nigerian Federal Civil Service Commission fired Ms. Onoh in 2021. Sahara Reporters next claimed that a "*report by a seven-man committee indicted the controversial former Nigerian High Commissioner to Namibia over her alleged financial misappropriation while serving in the Southern African country*".

15. Sahara Reporters noted that Defendant Aduda and Defendant Onyeama were members of this committee.

16. Sahara Reporters also claimed that the committee directed that Ms. Onoh be referred to the Independent Corrupt Practices and other related offences Commission (ICPC) for investigation. Sahara Reporters also referenced two alleged letters regarding Ms. Onoh's dismissal that this Commission sent to Ms. Onoh detailing the reasons for her termination. The article further stated that this Commission ordered Ms. Onoh to refund to the Nigerian mission all the money that she had improperly used.

17. The basis of the Article was statements and claims about Ms. Onoh which Defendants Onyeama and Aduda made. The reason for their making false statements about Ms. Onoh was to discredit her following her reporting of corruption by those Defendants.

18. Specifically, as an Ambassador, Ms. Onoh had reported multiple incidents of embezzlement of millions of U.S. Dollars and Billions of Naira of Nigerian Government funds by various Nigerian officials. Further, she reported the embezzlement of $2.8 Million Dollars in Red Cross Funds meant for Haiti earthquake victims as well as the egregious acts of visa racketeering against the USA and other countries in which her successor in Jamaica had engaged. Moreover, Ms. Onoh reported incidents of Value Added Tax ("VAT") fraud against the Namibian Government in which Ms. Onoh's predecessor in the Nigerian mission in Namibia had engaged.

19. Due to their complicity in these acts, Defendants Onyeama and Aduda actively covered up these crimes and lashed out against Ms. Onoh in a vicious campaign to destroy her career and reputation.

20. In fact, Defendants Onyeama and Aduda attempted to have Ms. Onoh arrested for reporting the visa fraud against the United States and other countries by the Ambassador that succeeded her in Jamaica. Although Ms. Onoh was able to thwart that attempt, Defendants Onyeama and Aduda continued to press their attack on Ms. Onoh by making false claims in public and to Defendant Sahara Reporters and Defendant Sowore while attending conferences at the United Nations in New York initially in September of 2021 and continuing in to early 2022.

21. The claims that Sahara Reporters and Defendant Sowore made were wholly false.

22. Ms. Onoh was never terminated from any posting with the Nigerian government for misappropriation of funds. In fact, the reasons for Ms. Onoh's termination are easily discoverable as Ms. Onoh filed an appeal and legal proceedings in Nigeria challenging her termination. No one on behalf of the Nigerian government involved in Ms. Onoh's posting or the termination thereof contended that misappropriation of funds was the cause of the termination.

23. Defendant Onyeama did not create a seven-person Committee to investigate Ms. Onoh, nor did Defendant Aduda head up any such Committee. In fact, such Committee was never impaneled to investigate Ms. Onoh by anyone.

24. No Committee made any demand on Ms. Onoh to refund or return any money.

25. The April 2023 article was essentially an update of an article that Sahara Reporters had printed in September of 2021. Following the September 2021 publication, Ms. Onoh's counsel, Mr. Kekere Akpe, sent Defendant Sowore a letter demanding an apology and a retraction. However, Defendant Sowore refused.

26. Ms. Onoh's attorney also demanded that Sahara Reporters and Defendant Sowore print the actual letters from the Committee and the alleged report. Again, Defendant Sowore refused.

27. Therefore, Sahara Reporters and Defendant Sowore knew prior to the April 2023 publication that the facts stated in the September 2021 publication were false and malicious.

28. As a result of the Defendants' conduct, Ms. Onoh has suffered severe economic and personal injuries.

### Count I. Defamation

29. Onoh incorporates paragraphs 8 – 28 as if set forth at length.

30. By publishing the Article on its website on April 21, 2023, Defendant Sahara Reporters and Defendant Sowore published false statements about Ms. Onoh to literally the entire world. Defendant Sahara Reporters and Defendant Sowore either knew or should have known that these statements were false at the time they made them to these third parties. As a result of Defendants' conduct, Ms. Onoh suffered severe reputational damage, mental anguish, and economic injuries.

### Count II. Intentional Infliction of Emotional Distress

31. Onoh incorporates paragraphs 8 – 28 as if set forth at length.

32. Defendants Onyeama and Aduda intentionally or recklessly made the statements set forth in paragraphs 8 - 28. Defendant Onyeama and Aduda's conduct was extreme and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized community. As a result of Defendant Onyeama and Aduda's conduct, Ms. Onoh suffered severe emotional and reputational damages.

33. Defendants Sahara Reporters and Sowore intentionally or recklessly published the Article despite having knowledge of its falsity. Defendant Sahara Reporters and Sowore's conduct was extreme and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized community. As a result of Defendant Sahara

Reporters and Sowore's conduct, Ms. Onoh suffered severe emotional and reputational damages.

## Damages

34. Due to the Defendants' conduct, Ms. Onoh has suffered severe emotional and reputational damages. Additionally, Ms. Onoh has suffered total dislocation and isolation from her family, friends, social network, and country due to the security challenges created by the Defendants. Ms. Onoh has also suffered economic damages as these actions by the Defendant have damaged her ability to find employment in the United States and all but eliminated her ability to work or live safely in her homeland.

35. Defendants' conduct as described herein was done intentionally and with "malice" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendants are the type of conduct that the State of Texas protects against by the imposition of exemplary damages. Therefore, Ms. Onoh seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendants for their wrongful conduct and to set an example to deter Defendants and others similarly situated from committing similar acts in the future.

## Prayer

36. WHEREFORE, Ms. Onoh prays that, upon final determination of this cause of action, she receives judgment from Defendants for:

   36.1   Damages as pleaded;

   36.2   Costs of Court; and

   36.3   All such other and further relief at law and in equity to which Ms. Onoh may show herself to be justly entitled.

Respectfully submitted,

*WESTERBURG & THORNTON, P.C.*
10440 N. Central Expressway, Suite 800
Dallas, Texas 75231
Phone No.:	214.528.6040
Facsimile:	214.540.7207
Email:	steve@mwtlaw.com

By: _____
    Steven Thornton
    State Bar No. 00789678

**ATTORNEY FOR PLAINTIFF**